UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                              |   |                        |
|------------------------------|---|------------------------|
| UNITED STATES OF AMERICA     | \| |                        |
|                              | \| |                        |
| v.                           | \| | No.  1:13-cr-10262-DPW |
|                              | \| |                        |
| MICHAEL P. O'DONNELL,        | \| |                        |
|     Defendant | \| |                   |

**DEFENDANT'S MOTION TO DISMISS
AND INCORPORATED MEMORANDUM OF LAW**

The defendant, Michael O'Donnell, by and through undersigned counsel, hereby respectfully requests this Honorable Court to dismiss Count One of the Indictment alleging a violation of 18 U.S.C. § 1344 (bank fraud) for failure to state a criminal offense and for lack of jurisdiction pursuant to Fed. R. Crim. P. 12(b)(3)(B).  As grounds therefore, the indictment fails to satisfy an element of § 1344 which requires that the defrauded bank be insured by the Federal Depository Insurance Corporation ("FDIC").  Contrary to the indictment, the bank at issue is not FDIC-insured and the count alleging bank fraud must be dismissed.

**FACTS**

**A.    Relevant Facts Set Forth in the Indictment**

The defendant, Michael O'Donnell, is alleged to be a "loan originator employed by AMEX Home Mortgage." Indictment [hereinafter, Ind.] at ¶ 4.  On March 12, 2007, O'Donnell allegedly "arranged a $352,000 first mortgage loan from Homecomings [Financial Network] to L.T., secured by property owned by L.T. and M.A." *Id.* at ¶ 10a.  A payment of $37,612.16 was owed by the borrower, L.T., to Homecoming.  Loan documents allegedly state that L.T. and M.A. paid the $37,612.16 from their own funds, but the money was actually drawn from AMEX Home

1

Mortgage's account. *Id.*

On April 20, 2007, O'Donnell allegedly "arranged a $44,000.00 loan from Countrywide Bank[, FSB] to L.T. that was secured by a second mortgage on property owned by L.T. and M.A. *Id.* at ¶ 10c. The indictment alleges that this loan was obtained to "enable[] O'DONNELL and AMEX Home Mortgage to be repaid the sum of $37,392.16 which had been supplied by O'DONNELL." *Id.* In connection with the loan application, O'Donnell also allegedly "inflated the loan applicant's income and assets" and "provided bogus bank account statements." *Id.* at ¶ 10d.

Count One[1] of the indictment states that O'Donnell "executed and attempted to execute a scheme and artifice to defraud Countrywide Bank, FSB, a federally insured financial institution..." in violation of 18 U.S.C. § 1344. *Id.* at ¶ 12.

Countrywide Bank, FSB, the bank that O'Donnell is alleged to have defrauded in violation of 18 U.S.C. § 1344, is not the bank O'Donnell actually dealt with. Instead, O'Donnell transacted with an entity related to Countrywide Bank, FSB, Countrywide Home Loans, Inc. *See* Loan Origination Document, attached hereto as Exhibit A. Countrywide Home Loans, Inc. is not FDIC-insured.

## ARGUMENT

The indictment states that the defendant, Michael P. O'Donnell, defrauded an FDIC-insured bank, Countrywide Bank, FSB (hereinafter, "Countrywide"), as required for prosecution under 18 U.S.C. § 1344. As argued *infra*, the loan origination documents attached hereto as Exhibit A make clear, on their face, that the entity O'Donnell actually interacted with and received the loan from is Countrywide Home Loans (hereinafter, "Home Loans"). Home Loans,

---

[1] This is a one-count indictment.

the entity the loan actually originated from, is not FDIC-insured. Therefore, the government's indictment fails as a matter of law and Count One must be dismissed.

**A.    Motion to Dismiss Standard**

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). A district court has the power, however, to dismiss an indictment prior to trial if there is "a defect in the indictment or information." *See* Fed. R. Crim. P. 12(b)(3)(B). An indictment is insufficient if it fails to "specif[y] the elements of the offense charged [and] fairly apprises the defendant of the charge against which he must defend." *United States v. Savarese*, 686 F.3d 1, 6 (1st Cir. 2012). An indictment that tracks the language of the underlying statute is usually sufficient to meet this standard, provided that the excerpted statutory language sets out all elements of the offense without material uncertainty. *United States v. Troy*, 618 F.3d 27, 34 (1st Cir. 2010).

**B.    Facts Beyond the Scope of the Indictment**

Normally, an indictment's allegations are assumed to be true, and "courts routinely rebuff efforts to use a motion to dismiss as a way to test the sufficiency of the evidence behind an indictment's allegations." *United States v. Guerrier*, 669 F.3d 1, 3–4 (1st Cir. 2011). However, the First Circuit has held that courts may consider facts beyond the scope of the complaint "for documents the authenticity of which are not disputed by the parties." *Watterson v. Page*, 987 F.2d 1, 4 (1st Cir. 1993). The analysis a court must do in the civil-12(b)(6) context is nearly identical to the type of analysis a court must do in the criminal-12(b)(3)(B) context. The court in *United States v. Pitt-Des Moines, Inc.*, 970 F.Supp. 1346, 1349 (N.D.Ill.1997) put it accordingly:

> A motion to dismiss an indictment is more similar to a civil Rule 12(b)(6) motion, which tests the sufficiency of the underlying complaint (here the indictment). Thus, as with a rule 12(b)(6) motion to dismiss, the court accepts as true all factual allegations

3

> in the indictment. *Additionally, all uncontested allegations to which the parties had an opportunity to respond are taken as true.*

970 F.Supp. at 1349 (internal citations omitted) (emphasis added). If the court can consider facts beyond dispute in the civil-12(b)(6) context, there is no reason why a court ought not be able to consider them likewise in the criminal-12(b)(3)(B) context, where the nature and purpose of the analyses is identical. Here, the face of the loan origination documents attached hereto make clear that O'Donnell was not dealing with Countrywide, but instead Home Loans, a bank not insured with the FDIC.

**C.      Application of 18 U.S.C. § 1344**

     I.      <u>Elements of § 1344</u>

The elements of § 1344 are "well established: (1) the defendant must engage in a scheme or artifice to defraud, or must make false statements or misrepresentations to obtain money from (2) a financial institution and (3) must do so knowingly." *United States v. Colon-Rodriguez*, 696 F.3d 102, 106 (1st Cir. 2012). The second prong, that the defrauded bank is a "financial institution" as used in Title 18, is derived from 18 U.S.C. § 20's definition of a financial institution as "an insured depository institution (as defined in section 3(c)(2) of the Federal Deposit Insurance Act)." *United States v. Ayewoh*, 627 F.3d 914, 917 (1st Cir. 2010).[2] Section 3(c)(2) of the Federal Deposit Insurance Act, in turn, defines an "'insured depository institution' as 'any bank or savings association the deposits of which are insured by the FDIC] pursuant to the Federal Deposit Insurance Act.'" *Id.*, quoting 12 U.S.C. § 1813(c)(2). The purpose of § 1344, therefore, is to "protect the federal government's interest as an insurer of financial institutions." *United States v. Laljie*, 184 F.3d 180, 189 (2d Cir. 1999). That the defrauded bank is federally insured is thus a "substantive element of the crime." *Ayewoh*, 627 F.3d at 917. Not

---

[2] 18 U.S.C. § 20 defines "financial institution" in numerous ways not relevant here.

4

only this, but the First Circuit has held that the defrauded bank's FDIC-insured status is a "jurisdictional prerequisite" to enforcement of § 1344. *United States v. Brandon,* 17 F.3d 409, 424 (1st Cir. 1994).

> II. This Court Should Dismiss Count One Because the Bank From Which O'Donnell Actually Received the Loan Was Not FDIC-Insured.

The closest case on point in the First Circuit addressing this issue is *United States v. Walsh*, 75 F.3d 1 (1st Cir. 1996). In *Walsh*, the defendant was convicted under § 1344 for "carr[ying] out a scheme to defraud Dime Savings Bank of New York ("Dime-NY")." *Id.* at 3. There, the defendant dealt directly with Dime-NY's wholly-owned subsidiaries, Dime Real Estate Services of Massachusetts, Inc. ("Dime-MA"). *Id*. Dime-NY was federally insured; Dime-MA was not. *Id*. The court rejected the defendant's argument "that the evidence failed to show that the victim was a federally insured financial institution" because "Dime-NY was a federally insured bank, but Dime-MA--the immediate maker of the loans--was not." *Id.* at 9. Noting that it "confine[s its holding] to the present facts" the Court upheld the conviction, finding that the defrauded bank (Dime-MA) was a "wholly-owned subsidiary" and "alter-ego of Dime-NY." *Id*. Moreover, the court also found that Dime-NY essentially controlled the basic operations of Dime-MA and any loan issued by Dime-MA was "immediately assigned to Dime-NY." *Id*. As a result, the court held that "the mortgage fraud perpetrated against Dime-MA was effectively a fraud against Dime-NY." *Id.*

The facts in the present case are substantially different than in *Walsh*. Instead, this case is much more similar to *United States v. Bortnick*, Crim. No. 03-CR-0414 (E.D.P.A. October 17, 2004)[3] which analyzed, and ultimately distinguished, *Walsh*. In *Bortnick*, the indictment alleged that "Congress Financial Corporation [the defrauded bank] . . . was a wholly-owned subsidiary

---

[3] This case has been attached as Exhibit B.

5

of First Union National Bank, which was a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation." *Id.* at *6. The indictment further stated that the defendant "execute[d] a scheme to defraud Congress and First Union National Bank, and to obtain monies owned by and under the care, custody, and control of Congress and First Union National Bank." *Id.* After "[t]aking both statements in the Indictment with respect to First Union as true, the Court [found] that the United States has not sufficiently alleged a bank fraud claim against Defendant." *Id.* The court held that simply stating in the indictment that the defrauded company was a wholly-owned subsidiary of an FDIC-insured company is insufficient to establish a nexus between the fraud and the FDIC-insured monies. *Id.* at *6-7. The court then went on to distinguish *Walsh* because the government in *Walsh* had alleged and proved a connection between the monies held by the defrauded bank and the FDIC-insured parent bank. *Id.* Case law in other circuits supports the view espoused by *Bortnick* that more than a mere parent and wholly-owned subsidiary relationship is required. *United States v. Bennett*, 621 F.3d 1131, 1135-37 (9th Cir. 2010) (conviction for a violation of § 1344 overturned where the government only proved that the defrauded bank (Equicredit) was a wholly-owned subsidiary of an FDIC-insured bank (Bank of America)); *United States v. White*, 882 F.2d 250, 251-52 (7th Cir. 1989) (Posner, J.) (indictment dismissed where the defendant made false statements to a wholly-owned subsidiary of an FDIC-insured bank because the statements to the subsidiary was not intended to influence the FDIC-insured parent).

In this case, the government alleged in the indictment that O'Donnell simply defrauded Countrywide. In none of the loan origination documents is Countrywide listed; instead Home Loans is the only entity listed on any of the forms. There is, therefore, even less here than in the *Bortnick* case. In the *Bortnick* case, the government, at the very least, correctly alleged which

entity the defendant actually dealt with. Unlike *Walsh*, there is no indication in the indictment, whatsoever, that the entity O'Donnell actually dealt has any form of relationship between itself and Countrywide. This appears to be implicit in the indictment which fails to reference Home Loans in any way and only lists the parent company. *Bortnick*, *Bennett*, and *White* make clear that such a relationship, in and of itself, is insufficient for purposes of § 1344. It does not prove a connection between the funds of one and the funds of the other. Simply put, the indictment fails to allege a connection between the entity O'Donnell actually dealt with (an entity not insured with the FDIC) and Countrywide. Moreover, it fails to apprise O'Donnell of the nature of the charges against him, namely that it incorrectly indicates which entity O'Donnell actually had dealings with.

## CONCLUSION

The indictment states that the defendant, Michael P. O'Donnell, defrauded an FDIC-insured bank, Countrywide Bank, FSB, as required for prosecution under 18 U.S.C. § 1344. This Court may look beyond the scope of the indictment and consider facts beyond dispute, namely that the entity that actually issued the loan was Countrywide Home Loans, an entity not insured with the FDIC. Therefore, the government's indictment must fail and Count One must be dismissed.

Date: March 28, 2014                                Respectfully submitted,
                                                    MICHAEL P. O'DONNELL

                                                    By and through his attorney,

                                                    /s/ *Jeffrey A. Denner*
                                                    Jeffrey A. Denner, BBO#120520

        Adamo L. Lanza, BBO# 689190  
        J.A. Denner & Associates, P.C.  
        Four Longfellow Place, 35th Floor  
        Boston, MA 02114  
        Tel. (617) 227-2800  
        Fax (617) 973-1562  
        jdenner@dennerlaw.com

## **CERTIFICATE OF SERVICE**

I, Jeffrey A. Denner, hereby certify that on this the 28th day of March 2014, I caused a true copy of the foregoing *Defendant's Motion to Dismiss and Incorporated Memorandum of Law* to be served upon all necessary parties by virtue of electronically filing the same via the CM/ECF system.

        /s/ *Jeffrey A. Denner*  
        Jeffrey A. Denner