United States District Court
District of Massachusetts

_____

Criminal Action No. 1:13-cr-10262-DPW

**United States,**

v.

**Michael P. O'Donnell**

_____

**Memorandum in Support of Motion Under 28 U.S.C. § 2255 Seeking a New Trial by a Person in Federal Custody**

_____

## Issue Presented

1. Whether the defendant was deprived of the effective assistance of counsel where his trial counsel entered into a trial stipulation that effectively admitted his guilt and guaranteed his conviction and where his appellate counsel declined to raise the issue on direct appeal.

2. Whether, assuming the stipulation entered into by counsel did not constitute a full admission of guilt, trial counsel's unilateral decision not to have the defendant testify deprived him of the effective assistance of counsel.

## Procedural History

In his appellate brief, the defendant's appellate counsel accurately described the procedural history in the trial court. For purposes of this memorandum, the defendant will rely on that description, the relevant portions of which are as follows:

> Defendant Michael P. O'Donnell ["O'Donnell"] was indicted by a grand jury in the District of Massachusetts on September 11, 2013 for bank fraud and attempted bank fraud, in violation of 18 U.S.C. § 1344. App. I/3, 19-27.[1] The indictment alleged that as a loan originator, O'Donnell engaged in a scheme to defraud mortgage lenders in multiple transactions including, but not limited to, a $44,000 loan from Countrywide Bank to "L.T." on or about April 20, 2007. That loan attributed to Countrywide Bank was the only transaction involving a federally-insured bank alleged in the indictment.
>
> O'Donnell filed a motion to dismiss the indictment on the grounds that the mortgage loan attributed to Countrywide Bank was actually made by Countrywide Home Loans, a mortgage company which was not a "financial institution" within the ambit of the bank fraud statute. App. I/31-34. The government opposed defendant's motion to dismiss. App. I/55-144. The district court (Woodlock, J.) denied the motion on the grounds that the indictment alleged on its face a crime within the court's jurisdiction, and that a motion to dismiss was not the proper vehicle to test the sufficiency of the evidence to support that allegation. App. I/8.

---

[1] References to the Record-Appendix will be abbreviated herein as "App. [volume/page number]." References to the Addendum will be abbreviated as "Add. [page number]."

Shortly before the scheduled start of trial, O'Donnell waived his right to a trial by jury, App. I/200-201, and executed a trial stipulation in which he admitted to having engaged in a scheme to defraud mortgage lenders in connection with the refinancing of a three-family dwelling located at 40 Harbor Street in Salem, MA. More specifically, O'Donnell stipulated to having submitted two applications for mortgage loans in connection with that refinancing, including a second mortgage loan in the amount of $44,000 from "Countrywide." App. I/186-199. O'Donnell stipulated to having provided false documents and information in connection with said loan application. *Id.*

A three-day bench trial began on July 15, 2015 and ended on July 21, 2015. The sole contested issue at trial was whether the government had proven beyond a reasonable doubt that the entity which O'Donnell had defrauded with respect to the $44,000 Countrywide loan was Countrywide Bank, a financial institution within the ambit of the bank fraud statute, as opposed to Countrywide Home Loans, which was not a financial institution within the ambit of § 1344. At the conclusion of trial, the district court found O'Donnell guilty of attempted bank fraud under both 18 U.S.C. § 1344(1) and § 1344(2). The court did not convict O'Donnell of the completed offense.

The district court imposed sentence on December 14, 2015. O'Donnell was sentenced to serve 36 months in prison, to be followed by two years of supervised release. No restitution was ordered, but O'Donnell was sentenced to pay a fine in the amount of $150,000. Judgment entered on December 18, 2015. Add. 8-13.

O'Donnell filed a timely notice of appeal. App. I/17, 529-530. A motion to stay execution of sentence filed in

the district court was denied on February 1, 2016. App. I/18.

On October 19, 2016, the United States Court of Appeals for the First Circuit affirmed the defendant's conviction. *United States v. O'Donnell*, 840 F.3d 15 (1st Cir. 2016).

## Statement of Facts

The First Circuit succinctly summarized the facts and the context in which they. The relevant portions of the factual findings are as follows:

> O'Donnell was indicted under the Bank Fraud Act (the Act) on [September 11, 2013][1]. The Act provides:
>
>> Whoever knowingly executes, or attempts to execute, a scheme or artifice—
>>
>> (1) to defraud a financial institution; or
>>
>> (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
>>
>> shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.
>
> 18 U.S.C. § 1344.
>
> The indictment alleged that O'Donnell violated subsections (1) and (2) of the Act. Specifically, the

---

[1] The decision of the First Circuit erroneously lists the date as June 15, 2015.

4

indictment alleged that he "knowingly executed and attempted to execute a scheme and artifice to defraud Countrywide Bank, FSB, a federally-insured financial institution, and to obtain money ... and other property owned by and under the custody and control of Countrywide Bank, FSB, by means of false and fraudulent pretenses, representations, and promises, concerning material facts and matters in conjunction with a mortgage loan in the amount of $44,000 for property located at 40 Harbor Street, Salem, Massachusetts."

>Following indictment, O'Donnell waived his right to a jury trial and opted for a bench trial. He also entered into a stipulation. The stipulation set forth the following facts concerning the scheme alleged in the indictment.
>
>While serving as a self-employed loan originator operating through his loan originator business, AMEX Home Mortgage Corporation, O'Donnell completed loan applications and submitted them to mortgage companies on behalf of individuals seeking to purchase or refinance property. In 2007, O'Donnell sought to defraud mortgage lenders in connection with the refinancing of the property in Salem, Massachusetts referenced in the indictment.
>
>The scheme began with O'Donnell's efforts to obtain a mortgage loan on a different property, which was owned by a woman named L.T. In connection with that transaction, O'Donnell submitted a mortgage loan application containing false information about L.T. to Homecomings Financial Network, Inc. O'Donnell also paid, from a bank account controlled by AMEX, approximately $37,000 that L.T. was supposed to put down herself to secure the loan for that property.

5

After O'Donnell was successful in securing the mortgage loan in L.T.'s name, O'Donnell then sought to secure a second mortgage loan in L.T.'s name, this time for the Salem, Massachusetts property named in the indictment. O'Donnell sought this loan in order to obtain the $37,000 that he had put down to secure the first loan in L.T.'s name.

O'Donnell submitted the application for this second loan to a different entity from the one to which he had submitted the application for the first loan. The stipulation referred to the entity to which O'Donnell submitted the second loan application as follows: "Countrywide, where Countrywide Home Loans employees underwrote and processed the application."

This second loan application contained many of the same false statements that were in O'Donnell's application for the first loan in L.T.'s name. O'Donnell also provided fraudulent responses to various follow-up inquiries in the course of seeking this second loan. When this second loan closed, O'Donnell pocketed most of the proceeds.

The key issue at trial concerned whether O'Donnell's fraudulent scheme to secure the second loan targeted Countrywide Bank, FSB, as the indictment alleged, or only Countrywide Home Loans, as O'Donnell contended. The identification of the intended target was crucial because O'Donnell stipulated that Countrywide Bank, FSB was a "financial institution" within the meaning of the Act, while the government did not dispute that Countrywide Home Loans was not.

In ruling from the bench at the close of evidence, the District Court explained that it had determined that the record showed that O'Donnell was "on notice" that Countrywide Bank, FSB was "part of this transaction in

some form" in the second loan transaction. With that finding in place, the District Court then found that O'Donnell was guilty of "attempt[ing]" to execute—though not of actually executing—a scheme or artifice described in subsections (1) and (2) both because O'Donnell had intended to defraud Countrywide Bank, FSB and because he had intended to obtain money and property that was under Countrywide Bank, FSB's custody and control.

*United States v. O'Donnell*, 840 F.3d at 16-18.

Argument

I.  **The Defendant Is Entitled To A New Trial Where Poor Advice Provided By His Trial Counsel Deprived Him Of The Effective Assistance Of Counsel And Likely Resulted His Conviction In Circumstances Where He Should Have Been Acquitted**

As described above, the defendant and the government entered into a detailed trial stipulation in connection with his waiver of a jury trial in which he admitted to having engaged in a scheme to defraud mortgage lenders in connection with the refinancing of a three-family dwelling at 40 Harbor Street in Salem. His stipulation included an admission that he submitted two applications for mortgage loans in connection with that refinancing, including a second mortgage loan in the amount of $44,000 from "Countrywide." He also stipulated that he provided false documents and information in connection with that loan application. The difficulty with that stipulation is that it effectively admitted his guilt under the bank fraud statute, guaranteeing his conviction under at least the attempt portion of the statute. While this Court did conduct a limited colloquy as to that stipulation, that colloquy did not alert him that the stipulated facts by themselves could support his conviction. *Contrast United States v. Lyons*, 898 F.2d 210, 215-216 (1st Cir. 1990) (judge's colloquy included forewarning to defendant that court could decide case on stipulated facts alone and could

find him guilty on that basis). To the extent that his trial counsel advised him to enter into such an ill-advised stipulation, he deprived the defendant of the effective assistance of counsel. The defendant is entitled to a new trial on this basis.

In order to sustain a claim of ineffective assistance of counsel, a criminal defendant must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *Bell v. Cone*, 535 U.S. 685, 695 (2002); *Williams v. Taylor*, 529 U.S. 362, 390–91 (2000); *Strickland v. Washington*, 466 U.S. 668, 687–88 (1987). That standard applies in the context of a decision to stipulate to some or all of the facts trial— the defendant must demonstrate that there is a reasonable probability that, but for counsel's poor advice, he would not have agreed to a stipulated facts trial and would have insisted on proceeding with a jury trial. *See Cooper–Smith v. Palmateer*, 397 F.3d 1236, 1243–1244 (9th Cir.) (applying *Strickland* test to ineffective assistance claim arising out of stipulated facts trial), cert. denied, 546 U.S. 944 (2005);

Under 18 U.S.C. § 1344, the bank fraud statute, guilt may be established by defrauding a financial institution, defined as a federally insured bank, or by attempting to do so. Trial counsel's apparent strategy in entering into this stipulation, was to put the government to its proof on their

9

theory that he had fraudulently obtained funds from Countrywide Bank. He was successful in doing so, as this Court declined to convict the defendant under that theory. However, through the stipulation, the defendant effectively admitted to an attempt to defraud Countrywide Bank. While this may not have been the government's primary theory of the case, the stipulation itself nevertheless established his guilt under one of two prongs of the statute. It thus rendered him just as guilty as if he had been convicted of actually defrauding a bank and subjected him to the same penalties. *Contrast United States v. Simone*, 931 F.2d 1186, 1194 (7th Cir. 1991) (defendant charged with narcotics offenses was not denied effective assistance of counsel when defense counsel admitted during summation that defendant was a drug dealer; defense counsel intentionally stipulated facts and conceded those charges for which there was irrefutable evidence and no mandatory sentences, but argued defendant's innocence on charges with heavier penalties, as part of trial strategy). As this Court noted, "[h]e has pled to the essential elements of the offense. I do not think he thought he was doing that . . .". [Tr. **3**, 34].

There are, of course, circumstances where counsel advises a defendant to stipulate facts for the purpose of admitting guilt, allowing him to then focus on punishment. *See e.g. Florida v. Nixon*, 543 U.S. 175, 191–192 (2004) (upholding counsel's strategic decision to concede guilt and

focus on the penalty phase). There are also cases where counsel may reasonably stipulate to facts amounting to less than a full admission of guilt. *See e.g. Berry v. King*, 765 F.2d 451, 454 (5th Cir. 1985) (petitioner failed to establish prejudice from stipulation entered into by his counsel where that stipulation did not admit specific intent, lack of which was the defense petitioner presented in guilt phase of trial, and facts stipulated were ones that the state could easily establish). Here, as noted above, the stipulation amounted to a full admission of guilt under the bank fraud statute, and no view of the record can establish the reasonableness of such a strategy.

    Finally, to the extent that appellate counsel failed to address this issue in the defendant's direct appeal, they also deprived him of the effective assistance of counsel by waiving an issue that had a high likelihood of succeeding. *Smith v. Robbins*, 528 U.S. 259, 288-289 (2000). That is, there is reasonable probability that, but for his appellate counsel's unreasonable failure to raise a particular nonfrivolous issue on appeal, he would have prevailed on that appeal. *Milton v. Miller*, 744 F.3d 660, 669 (10th Cir. 2014), citing *Id.* at 285. *See Delgado v. Lewis*, 223 F.3d 976, 980-981 (9th Cir. 2000).

    Ultimately, the stipulation was nothing more than a guilty plea to one of two theories set forth in the statute and with no benefit from that stipulation. Had the defendant known he was doing so—and he clearly did not—

11

he certainly would not have agreed to the stipulation. More important, to the extent that trial counsel made a strategic decision to draft a stipulation that guaranteed a conviction under the statute, and to the extent that his appellate attorneys failed to address that issue on appeal, their decisions were manifestly unreasonable.

II.  **Assuming The Stipulation Entered Into By Counsel Did Not Constitute A Full Admission Of Guilt, Trial Counsel's Unilateral Decision Not To Have The Defendant Testify Deprived Him Of The Effective Assistance Of Counsel**

Assuming the stipulation did not constitute a full admission of guilt, the only way to salvage this case would have been to have the defendant testify on his own behalf. Although he and his counsel had planned for him to testify, for reasons that are not clear, counsel made a unilateral decision not to call him as a witness.

A decision by trial counsel to call or not to call a witness, including the defendant, is ordinarily a matter of trial tactics and not subject to post-conviction review. *United States v. Mullins*, 315 F.3d 449, 453 (5th Cir. 2002). However, the decision of a criminal defendant to testify or waive the right to testify at trial is personal to him, notwithstanding the wishes of his trial counsel. *Brown v. Artuz*, 124 F.3d 73, 77-78 (2d Cir. 1997). *See Rock v. Arkansas*, 483 U.S. 44, 49–53 (1987); *Jones v. Barnes*, 463 U.S. 745, 751 (1983). The failure of the attorney to make

that clear to the defendant or to honor the defendant's decision as to whether to testify amounts to ineffective assistance of counsel. *Id.* at 79-80.

In this case, the defendant contends that after he and counsel had decided that he should testify, counsel simply failed to call him as a witness. While counsel may have had tactical reasons for doing so, by making a unilateral decision, he deprived the defendant of the effective assistance of counsel. *Id. See Rock v. Arkansas*, 483 U.S. at 49–53.

Further, that decision was both manifestly unreasonable and prejudicial. In view of his stipulation that he had engaged in fraudulent conduct, the only way he could avoid a conviction would be to establish that he did not know that the institution he sought to defraud was Countrywide Home Loans and not Countrywide Bank. The only way he could establish that point would be to testify—as he had planned—that he was not aware of the involvement of Countrywide Bank. More specifically, he was prepared to testify that he was not aware of the language in the documents stating "thank you for submitting your loan to Countrywide Bank FSB". He would further testify that he had a longstanding contractual relationship with Countrywide Home Loans and that he had closed hundreds of Countrywide loans prior to this one. Every one of them read, "thank you for submitting your loan to Countrywide Home Loans". He quite reasonably

was not aware that the documentation for Countrywide loans had changed or that Countrywide Home Loans had entered into a relationship with Countrywide Bank. He never submitted documents to Countrywide Bank, and no employee of either entity had informed him of the change.

As with his challenge to the stipulation, the failure of appellate counsel to address this issue deprived the defendant of the effective assistance of counsel, since the issue was stronger than the ones they raised. *See Smith v. Robbins*, 528 U.S. at 288-289; *Delgado v. Lewis*, 223 F.3d at 980-981.

Where the defendant had no other effective way of disproving inferences argued by the government—i.e., that he must have been aware that he was dealing with Countrywide Bank—the decision not to call him as a witness cannot be justified. The decision of appellate counsel to forgo this issue compounded the error. The defendant is entitled to a new trial on this basis.

### III. Conclusion

Based on the authorities and reasons set forth above, the defendant asks that this Court grant him a new trial or such other relief as he may be entitled.

Respectfully submitted,

**Michael P. O'Donnell**,
*By his attorney,*

Dana Alan Curhan
B.B.O. # 544250
45 Bowdoin Street
Boston, Massachusetts 02114
(617) 267-3800
dana.curhan@verizon.net